The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 6, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: June 6, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 11-20597 |
| | ) | |
| BRIDGET A. ANGE, | ) | Chapter 13 Proceedings |
| Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |

MEMORANDUM OF OPINION[1]

This Chapter 13 case is currently before the Court on the debtor's objection to the secured claim of real estate tax certificate holder CapitalSource Bank FBO Aeon Financial, LLC ("CapitalSource"). For the reasons that follow, the Court overrules the debtor's claim objection and allows CapitalSource's secured claim in the amount of $10,945.01 with postpetition interest accruing at the rate of 18% on the full certificate purchase prices, including both the paid and unpaid principal, until the entire claim is paid in full. In short, while the provisions of 11 U.S.C.

---

[1]This opinion is not intended for official publication.

§ 1325(a)(5) might permit a debtor to modify the treatment of a secured tax claim and pay less than would otherwise be required under state law absent a bankruptcy filing, the debtor's confirmed Chapter 13 plan contains no such provisions modifying the treatment of CapitalSource's secured tax claim.

## JURISDICTION

The Court has jurisdiction over this proceeding. 11 U.S.C. § 1334(b). An objection to a claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B), which falls within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Ohio state law provides a procedure whereby Ohio counties may generate revenue by selling tax certificates on real estate parcels with delinquent property taxes. Ohio Rev. Code Ann. § 5721.30, *et seq*. Certificate holders purchase the county's right to payment on delinquent property taxes for a real estate parcel. The county receives necessary revenue, and the certificate holder generally receives a first-priority lien on the real estate parcel. All of the tax certificates held by creditor CapitalSource in this case came from negotiated sales with Cuyahoga County pursuant to Ohio Revised Code § 5721.33.

On October 26, 2009, CapitalSource purchased a negotiated sale tax certificate for tax years 2007 and 2008 on a real estate parcel that is debtor Bridget A. Ange's principal residence. On September 2, 2010, CapitalSource purchased an additional negotiated sale tax certificate with respect to the same parcel for the 2009 tax year.

On December 20, 2011, Bridget A. Ange filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule D - Creditors Holding Secured Claims (ECF No. 1, at 14), the debtor listed as $11,000 tax lien claim. Instead of providing the creditor's name, the debtor listed the creditor's name as "Property Taxes." *Id.* Instead of providing the creditor's address, the debtor listed her own address. *Id.*

On April 13, 2012, the Court confirmed the debtor's Chapter 13 plan. Paragraph 3A of the debtor's Chapter 13 plan provides:

> Trustee shall pay the monthly amount to allowed claims for mortgage arrearages and real estate tax arrearages.

ECF No. 19, at 4. The confirmed plan listed four claims owed to "Cuyahoga County Treasurer" for real estate tax arrearages. *Id.* The debtor did not list a claim owed to CapitalSource, but two of the claims in Paragraph 3A of the plan attributed to the Cuyahoga County Treasurer appear to correspond to tax

3

certificates actually held by CapitalSource. *Id.* Under the heading "Estimated Arrearage Claim" the following handwritten dollar amounts appear for the two claims: "3,469.70 (18%)" and "1,896.68 (18%)." *Id.* Presumably, "(18%)" refers to the applicable interest rate, though a claim listed in Paragraph 3A is paid according to the terms of the proof of claim. The plan provides for the trustee to pay monthly payments of $84.00 on the claim of $3,469.70 and $46.00 on the claim of $1,896.68. *Id.*

Based upon the Court's review of this case, it does not appear that CapitalSource received timely notice of the debtor's bankruptcy or Chapter 13 plan. At some point, however, CapitalSource received actual notice of the debtor's bankruptcy. On June 7, 2012, counsel for CapitalSource filed a secured claim for $10,945.01 with 18% interest. CapitalSource's claim reflects certificate purchase prices totaling $5,366.38, "Legal Fees and Costs" totaling $3,770.25, and prepetition interest totaling $1,808.38.

DISCUSSION

"Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150 (1991) (citations omitted). A Chapter 13 debtor "may submit for the bankruptcy court's confirmation a plan

4

that 'modif[ies] the rights of holders of secured claims . . . or . . . unsecured claims,' § 1322(b)(2), and that 'provide[s] for the payment of all or any part of any [allowed] claim,' § 1322(b)(6)." *Id.* (alterations in original) (footnote omitted).

"The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). A bankruptcy court order confirming a debtor's Chapter 13 plan is a final judgment. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 130 S. Ct. 1367 (2010).

In determining whether a debtor's confirmed Chapter 13 plan binds a creditor, the Court may consider whether the creditor received due process. *See generally Lampe v. Kash*, 735 F.3d 942 (6th Cir. 2013). In this case, the Court need not decide whether CapitalSource received due process. If CapitalSource did not receive due process and later sought relief from judgment, the confirmed Chapter 13 plan would not bind CapitalSource. If CapitalSource did receive due process, the confirmed Chapter 13 plan would bind CapitalSource; however, the debtor's confirmed Chapter 13 plan contains no provisions modifying the treatment of CapitalSource's secured tax claim. Accordingly, the confirmed Chapter 13 plan has no bearing on the debtor's objection to claim. Instead the

5

allowed claim is determined under applicable state law. *See* 11 U.S.C. § 502.

A. <u>*Determining the amount of an ad valorem tax*</u>

CapitalSource argues that the Court may not permit the debtor to pay less in this Chapter 13 case than the debtor would have to pay outside of bankruptcy under Ohio state law. CapitalSource cites 11 U.S.C. § 505(a)(2) for the proposition that the Court may not allow the debtor to pay less in a Chapter 13 plan than the debtor would have to pay under an Ohio state law tax certificate redemption. Section 505(a)(2) provides, in pertinent part:

> (2) The court may not so determine–
>> . . . .
>> (C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

11 U.S.C. § 505(a)(2). There is no dispute that the applicable periods for contesting or redetermining the amounts of the real estate taxes at issue have expired.

Section 505(a)(2) defines part of the bankruptcy court's subject-matter jurisdiction. *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 284–85 (6th Cir. 2001); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1138 (6th Cir. 1991). Accordingly, it is appropriate for the Court

to consider whether it has subject-matter jurisdiction to rule on the debtor's claim objection. *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

The tax certificates at issue in this case represent the right to collect ad valorem taxes. In the debtor's most-recent brief, the debtor argued that the tax certificates at issue are not ad valorem in nature. The debtor is incorrect. The tax certificates at issue represent ad valorem—Latin for "according to value"—tax claims. Real estate property taxes under Ohio law are ad valorem taxes, and Ohio law provides that the delinquent taxes may be transferred to a tax certificate purchaser in a negotiated sale. Ohio Rev. Code Ann. § 5721.33(G) ("Upon issuing the tax certificates, the delinquent taxes that make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder or holders."); *cf. In re Cortner*, 400 B.R. 608, 612–13 (Bankr. S.D. Ohio 2009) (citing analogous provisions for tax certificates sold at public auction).

At the same time, the Court is not determining "the amount or legality of any amount arising in connection with an ad valorem tax" by ruling on the debtor's claim objection. 11 U.S.C. § 505(a)(2)(C); *see In re Read*, 692 F.3d 1185 (11th Cir. 2012) (holding a bankruptcy filing does not extend the period for a debtor to contest a valuation of real property for the purpose of Florida real estate

7

taxes); *In re Village at Oakwell Farms, Ltd.*, 428 B.R. 372 (Bankr. W.D. Tex. 2010) (discussing whether the bankruptcy court had jurisdiction to review or determine a tax assessment). The parties do not dispute the valuations of the property at issue, the proper amount of any assessment, or the underlying amount of the original taxes in this case. The Court is not determining the amount of a tax or an amount in connection with a tax, *e.g.*, the property's valuation for assessment purposes. The Court is determining the appropriate treatment of a tax claim, which happens to be a secured claim, in a Chapter 13 case. Under CapitalSource's reading of § 505(a)(2)(C), bankruptcy courts should be precluded from disallowing any amount of an ad valorem tax claim; however, § 505(a)(2) states "[t]he court may not so *determine* . . . the amount or legality of any amount arising in connection with an ad valorem tax . . . ." 11 U.S.C. § 505(a)(2)(C) (emphasis added). Under CapitalSource's reading, the Court would be precluded from disallowing *or allowing* any amount of an ad valorem tax claim, which would significantly impair the efficacy of the bankruptcy process.

CapitalSource's reading of § 505(a)(2) is incorrect. Section 505 precludes a bankruptcy court from determining the amount of an ad valorem tax, but it does not prevent a bankruptcy court from determining the amount of a tax claim, including tax claims which are ad valorem in nature. The word "claim" does not

8

appear in § 505(a)(2)(C). CapitalSource cites no court which has adopted its interpretation of § 505(a)(2)(C), and the plain language of 11 U.S.C. § 505(a)(2)(C) refers to determining the amount owed on an ad valorem tax, not determining the allowed amount and treatment of a tax claim.

CapitalSource cites *In re Powell-Garvey Co.*, No. 05-43338, 2006 WL 6885807, at *2 (S.D. Ga. June 5, 2006), for the proposition that "the language of § 505(a)(2)(C) is 'very broad.'" Notably, however, the court in *Powell-Garvey* considered § 505(a)(2)(C) in the context of a debtor's request to reconsider a county's valuation of real property and the resulting property tax assessment. *Powell-Garvey*, 2006 WL 6885807, at *2–3 ("[I]t is clear that what [the debtor] is asking this Court to do is to make a determination of its liability based on the vastly lower valuation . . . rather than the county appraisal figures."). The *Powell-Garvey* decision does not support CapitalSource's position; if anything, it weakens it.

Accordingly, the Court has subject-matter jurisdiction to decide this claim objection.

B. *The allowed amount of a tax certificate claim*

In order to rule on the debtor's claim objection, the Court must consider what amount CapitalSource was entitled to receive on the debtor's bankruptcy

9

petition date. *See* 11 U.S.C. § 502. The Court determines CapitalSource's underlying right to payment according to relevant state law. Under Ohio law, the parcel owner must fully pay the certificate purchase price and any accrued interest, or the certificate holder may foreclose on the property. Ohio Rev. Code Ann. §§ 5721.37 and 5721.38.

Before a tax certificate holder initiates foreclosure proceedings, a person entitled to redeem the parcel "may redeem the parcel by paying to the county treasurer an amount equal to the total of the certificate redemption prices of all tax certificates respecting that parcel." Ohio Rev. Code Ann. § 5721.38(A). For tax certificates subject to a negotiated sale,

> "certificate redemption price" means the amount equal to the sum of the following:
>
> (1) The certificate purchase price;
>
> (2) Interest accrued on the certificate purchase price at the certificate rate of interest from the date on which a tax certificate is delivered through and including the day immediately preceding the day on which the certificate redemption price is paid;
>
> (3) The fee, if any, charged by the county treasurer to the purchaser of the certificate under division (J) of section 5721.33 of the Revised Code;
>
> (4) Any other fees charged by any county office in connection with the recording of tax certificates.

Ohio Rev. Code Ann. § 5721.30(F).

After a certificate holder initiates foreclosure proceedings, but before a foreclosure sale is confirmed, a person entitled to redeem the parcel

> may redeem the parcel by paying to the county treasurer the sum of the following amounts:
>
> > (1) The amount described in division (A) of this section;
> >
> > (2) Interest on the certificate purchase price for each tax certificate sold respecting the parcel at the rate of eighteen per cent per year for the period beginning on the day on which the [the foreclosure proceeding was initiated] and ending on the day the parcel is redeemed under this division;
> >
> > (3) An amount equal to the sum of the county prosecuting attorney's fee under division (B)(3) of section 5721.37 of the Revised Code plus interest on that amount at the rate of eighteen per cent per year beginning on the day on which the payment was submitted by the certificate holder and ending on the day the parcel is redeemed under this division.  If the parcel is redeemed before the complaint has been filed, the prosecuting attorney shall adjust the fee to reflect services performed to the date of redemption, and the county treasurer shall calculate the interest based on the adjusted fee and refund any excess fee to the certificate holder.
> >
> > (4) Reasonable attorney's fees in accordance with section 5721.371 of the Revised Code if the certificate holder retained a private attorney to foreclose the lien;
> >
> > (5) Any other costs and fees of the proceeding allocable to the certificate parcel as determined by the court or board of revision.

Ohio Rev. Code Ann. § 5721.38(B). In the debtor's case, CapitalSource filed a foreclosure action, so the amount of CapitalSource's prepetition claim is determined pursuant to Ohio Revised Code § 5721.38(B). Notably, the certificate rate of interest for each tax certificate in this case is 18%, which is the same interest rate required to redeem the parcel after a foreclosure has been filed. Ohio Rev. Code Ann. § 5721.38(B)(2); *cf. In re Bowers*, 506 B.R. 249, 251 (B.A.P. 6th Cir. 2013) (certificate rate of interest was only 0.25%). Applying the same interest rate simplifies the Court's calculations for CapitalSource's claim, which are described below.

C.   *Modification of a secured claim*

Chapter 13 of the Bankruptcy Code allows debtors to "modify the rights of holders of allowed secured claims." 11 U.S.C. § 1322(b)(2); *In re Lane*, 280 F.3d 663 (6th Cir. 2002); *cf. In re City of Detroit, Mich.*, 504 B.R. 97, 150 (Bankr. E.D. Mich. 2013) (stating that the Bankruptcy Code permitted impairment of creditors' state law rights to payment even when the Michigan Constitution provided that the rights were not subject to impairment). CapitalSource, as an Ohio tax certificate holder, holds a secured claim. CapitalSource argues that sustaining the debtor's claim objection would violate § 1322(b)(2), which provides that a Chapter 13 plan may "modify the rights of holders of secured

12

claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 101(51). As a tax certificate holder, CapitalSource has a secured claim that is secured only by real property that is the debtor's principal residence; however, CapitalSource does not have a *security interest*, as defined by the Bankruptcy Code. *See* 11 U.S.C. § 101(51); *In re Lamont*, 740 F.3d 397, 409 (7th Cir. 2014). "The term 'security interest' means lien created by an agreement." 11 U.S.C. § 101(51).

The antimodification language contained in § 1322(b)(2) is inapplicable in this case. "[R]eal estate tax liens or liens provided by the Ohio statutes relating to the sale of real estate tax certificates are not security interests because they are not liens 'created by agreement.' " *In re McLemore*, 426 B.R. 728 (Bankr. S.D. Ohio 2010) (citing 11 U.S.C. § 101(51); *Cortner*, 400 B.R. at 611) (citation omitted).

The debtor and CapitalSource agree that the interest rate applicable to this claim is 18%. The parties disagree about what method the Court should use to calculate interest. The debtor contends that interest should be paid only on the unpaid principal balance as the debtor pays down the certificate purchase prices. CapitalSource argues that the debtor should pay interest on the full purchase price of each certificate until the certificate redemption price is paid in full, in accordance with Ohio law. In other words, CapitalSource argues that interest

13

accrues on both the paid and unpaid principal balance—*i.e.*, the full certificate purchase price—so long as a cent of the certificate redemption price remains unpaid.

Ohio law does not provide for cancellation of a tax certificate until the tax certificate has been redeemed in full. Ohio Rev. Code Ann. § 5721.38(B). The debtor correctly argues that Chapter 13 provides a remedy where she can make payments over time instead of redeeming in full. Section 1325(a)(5) provides that a Chapter 13 plan may modify the rights of a secured claim holder if the creditor accepts the plan or if the plan appropriately provides for the treatment of the creditor's secured claim. 11 U.S.C. § 1325(a)(5). For example, the debtor could have proposed making installment payments equal to the present value of the secured claim as of the effective date of the plan under 11 U.S.C. § 1325(a)(5)(B). The present value would presumably require an interest rate equal to the rate provided under state law. *See* 11 U.S.C. § 511.

In this case, however, the debtor's confirmed Chapter 13 plan does not modify CapitalSource's claim. The treatment of CapitalSource's claim in the debtor's confirmed Chapter 13 plan is ambiguous at best, and it appears that CapitalSource may not have received timely notice of the plan. Under these circumstances, the plan does not provide for treatment different from what

CapitalSource would otherwise receive under Ohio law. Furthermore, the debtor has failed to identify an alternate ground upon which the Court may sustain her claim objection pursuant to 11 U.S.C. § 502.

Had the Chapter 13 plan included language in the special provisions section that CapitalSource's secured tax claim would be paid postpetition interest at the rate of 18% on only the *unpaid* principal amount of the certificate purchase prices, there would be no doubt as to the debtor's intent to modify the treatment of CapitalSource's secured claim under section 1325(a)(5). Or, if the debtor had provided for CapitalSource's secured tax claim under Paragraph 3B instead of Paragraph 3A, the debtor could argue that postpetition interest paid under Paragraph 3B of the local form plan only accrues on the *unpaid* principal amount of the claim.

In this case, however, the confirmed Chapter 13 plan places CapitalSource's secured tax claims in a paragraph that provides for monthly payments "to allowed claims for ... real estate tax arrearages." The respective monthly payments of $84 and $46 appear to be based on an amount needed to pay in full over 60 months each tax certificate purchase price, with postpetition interest accruing at the rate of 18% on only the *unpaid* principal amount. But there is simply too much ambiguity in the language of Paragraph 3A to construe the plan as modifying the

treatment of CapitalSource's secured tax claim to something less than is provided for under state law. Paragraph 3A fails to address either the prepetition interest totaling $1,808.38 or the attorney's fees and costs totaling $3,770.25. Rather, the best reading of Paragraph 3A is that the trustee would make monthly payments on real estate tax arrearages based on the allowed amount of the secured tax claims. In other words, the language of Paragraph 3A provided for the allowed amount of the claim to control, as opposed to other plan provisions where the plan treatment would control over a contrary proof of claim.

In short, while the provisions of section 1325(a)(5) might indeed permit the debtor to modify the treatment of CapitalSource's secured tax claim and make installment payments equal to the present value of the secured claim as of the effective date of the plan, the debtor's confirmed Chapter 13 plan contains no such provisions modifying the treatment of CapitalSource's secured tax claim.

CapitalSource filed a proof of claim in this case for $10,945.01. Under Ohio law, as of the petition date CapitalSource was entitled to recover (1) the certificate purchase prices, totaling $5,366.38; (2) prepetition interest—*i.e.*, 18% simple interest on the certificate purchase prices from the dates the certificates were sold to the petition date, totaling $1,808.38; and (3) attorney's fees and costs, without interest, totaling $3,770.25. Therefore, CapitalSource's allowed secured

claim is $10,945.01.  The debtor's plan failed to modify the treatment of CapitalSource's secured tax claim, so the debtor's claim objection is not well-taken.

Accordingly, the Court overrules the debtor's objection to CapitalSource's claim.  CapitalSource's secured claim shall be allowed in the amount of $10,945.01, with postpetition interest accruing at the rate of 18% on the full certificate purchase prices—$5,366.38—including both paid and unpaid principal, until the entire claim is paid in full.

## CONCLUSION

For the reasons stated above, the Court overrules the debtor's claim objection.  The Court allows CapitalSource's secured claim in the amount of $10,945.01, with postpetition interest accruing at the rate of 18% on the full certificate purchase prices—$5,366.38—including both paid and unpaid principal, until the entire claim is paid in full.

All other relief requested by the debtor, including specific performance and payment of attorney's fees and costs, is denied pursuant to Bankruptcy Rules 3007(b) and 7001.

IT IS SO ORDERED.